IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

NICOLE SUTTON, as the Surviving
Spouse of HERBERT LEE SUTTON,
, M.D. (deceased),

        **Plaintiff,**

v.                              Case No. :

UNITED STATES OF AMERICA,

        **Defendant.**

## COMPLAINT

COMES NOW, Plaintiff, Nicole Sutton as the surviving spouse of Herbert Lee Sutton, M.D., (deceased) by and through her undersigned counsel, and for her Complaint against Defendant, United States of America, states as follows:

### I.
### JURISDICTION AND VENUE/ NATUREOF THE CASE

1. This cause of action is brought pursuant to the Tennessee Wrongful Death statutes Title 20-5-06 et seq. and the Federal Tort Claims Act.

2. Plaintiff Nicole Sutton is a resident of Jackson, Madison County, Tennessee, an adult citizen residing at 22 Rebel Cove, (38301), and the surviving spouse of Herbert Lee Sutton, M.D. (deceased), and therefore a proper person to bring this suit pursuant to Tenn. 20-5-106 and 20-5-107.

3. At all times relevant hereto, Herbert Lee Sutton, M.D., (deceased) was and an

adult resident and citizen of the State of Tennessee and an honorably discharged veteran of the United States Military.  Herbert Lee Sutton, M.D., was a retired Lieutenant Colonel who during his military duties was a life-saving trauma surgeon.  Dr. Sutton died on or about March 22, 2018, at the age of 62 at the VA Medical facility in Memphis, Tennessee.

4. This cause of action is brought pursuant to the <u>Federal Tort Claims Act,</u> 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671-2680, based upon allegations against an agency of the United States Government, the Department of Veterans Affairs pursuant to Tennessee law. The events described herein occurred at the Veterans Administration facility Memphis Tennessee, and the acts or omissions complained of were by employees of the federal government.

5. Plaintiff asserts compliance with all requirements for proper subject matter jurisdiction.  As a healthcare-related claim, Plaintiff complied with the pre-suit notice requirements of <u>Tennessee Code Annotated</u> §29-26-121 and 122 by the forwarding (by Federal Express-direct signature required) of the standard Form 95 "Claim for Damages" for administrative review of the claim by the Department of Veterans Affairs.   The pre-suit notice compliance (SF 95) is attached hereto as [Exhibit 1].   The form was accompanied by a compact disc containing Herbert Lee Sutton, M.D.'s health-related records as detailed in Plaintiff's [Exhibit 1].

6. The administrative claim [Exhibit 1] was timely and properly served as required, and receipt was acknowledged by the Agency of the USA within two years of the death of Herbert L. Sutton, MD. [Exhibits 2 and 3].

7. Attached hereto, and filed contemporaneously with the Complaint, are true and correct copies of "Certificates of Good Faith" prepared and filed by the undersigned counsel for

the Plaintiff. While Plaintiff is aware *Gallivan v United States, 943 F. 3rd 291 (6th Cir. 2019),* followed by *Gray v. United States, 2021 WL 3727234* from this district, may have negated the requirement of requiring a Certificate of Good Faith, pursuant to the Tennessee Health Care Liability Act. T.C.A. § 29-26-101, et seq. (§ 29-26-121), plaintiff nevertheless confirms she met the statutory compliance with the pre-suit notice requirements of the Tennessee Health Care Liability Act. T.C.A. § 29-26-101, et seq. (§ 29-26-121), [Exhibit 3]. Your plaintiff asserts specifically, it is affirmed in the Certificate of Good Faith that the medical issues in the case have been submitted to a licensed Missouri health care provider, a contiguous state of Tennessee, with expertise relevant to the case issues (and "competent" per T.C.A. § 29-26-115), who has provided a signed written statement supporting the merit of the claim, and indicating a willingness to provide testimony in accordance with the expert's supporting affidavit, [Exhibit 4]. Plaintiff would further show Pre-Suit Notice pursuant to the FTCA was compiled with and acknowledged in accordance of the statutory requirements as described above. A copy of the confirmation receipts are attached. [See Exhibits 2 and 3 attached].

8. The VA denied the administrative claim on June 29, 2021. The letter confirming denial of the claim, is attached as [Exhibit 5] to the Complaint, asserting that the Defendant denies that there was any breach of the acceptable standard of professional practice that occurred in the treatment of veteran Herbert Lee Sutton, M.D. (deceased) at the facilities maintained and operated by the Department of Veterans Affairs, United States of America.

9. This suit is timely filed with 6 months of the letter of denial by the agency. Based upon the foregoing premises, Plaintiff asserts that the Court possesses proper forum

venue and subject matter jurisdiction to determine the case issues set forth below.

## II.
## MATERIAL FACTS RELEVANT TO ALL COUNTS

10. At all times relevant hereto, The Department of Veterans Affairs Medical Center at Memphis, Tennessee, a/k/a "Memphis VAMC", a/k/a "Memphis VA Medical Center" and "Memphis Veterans Affairs" [collectively "Memphis VA Hospital"] were and are a part of the Department of Veterans Affairs, an agency of the U.S. government and did own, control, manage or operate a medical center and hospital in Memphis, State of Tennessee, and elsewhere in Tennessee, and did employ physicians, nurses and other licensed medical professionals to practice medicine and/or their health-care related professions, and did hold itself out to the public and to Plaintiff's decedent as providing qualified medical and hospital services.

11. At all times relevant hereto, Memphis VA Hospital was a part of the federal government or was a "Federal Agency" as defined in 28 U.S.C. §2671, et seq., and said Hospital and each individual defendant herein named was acting within the scope of its agency or employment by the United States Department of Veterans Affairs.

12. At the times indicated herein, Herbert Lee Sutton, M.D. (deceased) had presented at, was accepted by, and was being treated as a patient at Memphis VA Hospital, and by and through each individual health care provider employed therein or providing services by contract or agreement of said facility or the Department of Veterans Affairs, and each of them owed to this veteran, and to Plaintiff and Dr. Sutton's next of kin, the duty to provide hospital, nursing, medical and/or surgical care with the skill and care of a reasonable physician or other health-care professional in the same or similar circumstances, and Memphis VA Hospital had the duty to provide such qualified and competent health care professionals and care.

13. At all relevant times, Defendant UNITED STATES OF AMERICA acted by and through Memphis VA Hospital, and its actual and apparent agents and employees, including its physicians, administrators, nurses, technicians, social workers, aides, and including, but not limited to, each of the individual Defendants named herein, and did hold each of said care providers out as its employee or agent, both by express statement and/or by action and uniform or insignia, and Plaintiff did rely upon such representations.

14. Prior to the events herein complained of Dr. Sutton had suffered an injury to his spine rendering him an "incomplete quadriplegic." In order to maintain his continuing care status with the Spinal Cord Injury Unit VAMC Memphis, Dr. Sutton was required to annually present for a three-day physical examination at the VA Medical Center.

15. On or about March 12, 2018, Dr. Sutton, presented to the VAMC of Memphis, Tennessee for his annual examination, and was admitted as a patient. At that time, the VAMC was clearly on notice from his medical records and multiple prior admissions that due to his "fixed neck" (from the prior injury) Dr. Sutton could not be easily intubated if such was required, and the records confirmed that it takes specialized equipment and skill to do so.

16. At the time of his admission to the Memphis VA on March 12, 2018, Dr. Sutton was in no physical distress and had no breathing problems or airway constriction.

17. Initial examination after admission on March 12, 2018, found two wounds; one on each lower leg on the outside of Dr. Sutton's calf area.

18. These wounds were initially assumed – without further investigation - to be pressure ulcers by the Memphis VA medical providers, who proceeded to surgically debride this veteran's open leg wounds.

19. However, this veteran's pain increased drastically after the debridement. It was subsequently determined on culture that these wounds were not pressure sores but were an infective organism, pyoderma gangrenosum. Surgical debridement of pyoderma gagnrenosum is known to exacerbate the pain and growth of the wound and is therefore neither indicated nor proper.

20. By March 17, 2018, Dr. Sutton was started on vancomycin and meropenem to treat the pyoderma gangrenosum.

21. Without adequate monitoring, Dr. Sutton's vancomycin levels became critically high, initiating a vancomycin-related acute kidney injury.

22. Although this patient had been admitted without serious symptoms for a required three-day examination, Dr. Sutton was now administered strong analgesics including oxycodone and morphine due to the pain of his new surgical wounds.

23. Employees of the Memphis VA then allowed the narcotic medications to build up in Dr. Sutton, without proper monitoring of dosages or condition, as required for a patient in Dr. Sutton's condition, considering his airway compromise and quadriplegic condition. On March 21, 2018, a rapid response team was called due to this veteran's altered mental status, and Narcan was administered, at which time Dr. Sutton was transferred to the Intensive Care Unit in the Memphis VA hospital.

24. This veteran quickly developed a fever of 101 F. on March 21st, 2018.

25. A nephrology consultation on March 21, 2018, noted Dr. Sutton was now oxygen dependent, and although he was alert, he was not at baseline mental status, and was in worsening respiratory distress.

26. Although Dr. Sutton's records consistently note and state that he is very difficult to intubate due to having a "fixed neck" and not able to look up, down, left or right, it does not appear that the VA staff was concerned with his developing respiratory distress nor his continuing delusional mental state, none of which existed prior to his admission.

27. In the early morning hours of March 22, 2018, Dr. Sutton's blood oxygen saturation level dropped to the 50-60's, an absolutely critical state. Dr. Sutton's increasing delusional thinking and attempts to pull his oxygen mask off were documented.

28. Despite the oxygenation crisis ongoing, it appears that a medical care provider removed Dr. Sutton's oxygen face mask to attempt to administer oral medication on at 8:32 a.m. March 22, 2018, and the same was not replaced until approximately 8:40 a.m. that day.

29. On March 22, 2018, this veteran was receiving 100% oxygen through a face mask, but nevertheless his face mask was removed again by VA staff at 8:45 a.m. causing an immediate (documented at 8:46 a.m.) drop in Dr. Sutton's blood oxygen saturation to 40%, and by 8:49 a.m. that same morning, the veteran became unresponsive in severe respiratory distress and a code-blue was called.

30. The "code blue" (i.e. emergency) team responded, according to the medical records at 8:51 a.m., however a note by VA physician Dr. Rashesh Mourya indicates that advanced cardiovascular life support "ACLS" was not started until 9:26 a.m.

31. Subsequent to the arrival of the "code blue" team, at least 12 attempts to intubate are documented by five different providers within the medical records. During the delayed access to airway, Dr. Sutton's heart stopped and he suffered a cardiac arrest.

32. Based upon the incomplete records provided by the VA, it appears that three attempts at oral or nasal airway intubation were made by Benay Fartheree; and additional attempt

by Rsashesh Morrya, MD, two additional attempts by a CRNA Lisa Lucas, two more attempts by Andrea Gentile MD, prior to an ENT physician, Joseph Moak MD finally achieving a surgical airway.  This record is acknowledged as incomplete.

33. Despite Herbert Lee Sutton's records indicating the inability to tilt this patient's head back, and the need for only specialized equipment and trained personnel to attempt achieving an airway, and despite many verbal discussions between this veteran's surviving spouse Nicole Sutton with VA Memphis medical staff regarding the same, and despite this veteran's hospital induced ARDs depriving him of oxygen, improper attempts at intubation were repeatedly attempted.

34. Multiple unsuccessful attempts through direct laryngoscopy were attempted by multiple staff causing Dr. Sutton to suffer without oxygen.

35. Unsuccessful attempts of intubating with a laryngeal mask airway failed.

36. Unsuccessful attempts of intubation by nasogastric intubation failed.

37. Unsuccessful attempts of intubation by use of fiber-optics failed.

38. Multiple departments, physicians, nurses made at least 12 unsuccessful attempts before a surgical airway- that is, puncturing the neck below obstruction, commonly referred to as tracheotomy or chicothyrotomy - was attempted.  The surgical airway was not successfully achieved on Dr. Sutton until approximately 45 minutes after the code was called.

39. Further, a true code sheet does not appear to be present in any of the records provided by the Memphis VA, if the same does not exist, this is also a breach of the standard of care. Plaintiff served the VAMC in Memphis on multiple occasions with HIPAA-compliant

medical release authorizations and proper signed requests per HIPAA and HITECH demanding that the agency provide the entire medical chart for Plaintiff's deceased spouse, Dr. Sutton. Said agency has never provided an entire medical chart to Plaintiff as required by law.

40. Veteran Herbert Lee Sutton, M.D. died as a direct result of the failure to provide him an airway and was pronounced at 10:14 am on the morning of March 22, 2018.

### III.
### WRONGFUL DEATH/SURVIVAL CLAIMS

41. Plaintiff pursues her claims pursuant to TCA § 20-5-106 through 117, collectively known as the Wrongful Death Act.

42. In accord with said law, Plaintiff seeks damages both for the pain and suffering or other damages suffered by Herbert Lee Sutton, M.D. prior to his death, [nominally "survivor act damages"] and those damages suffered by herself and the next of kin by the death and loss of Dr. Sutton.

43. While Herbert Lee Sutton, M.D. was a veteran-patient at the Memphis VA Medical facility on and after May 12, 2018, the VA by and through its employees, agents and officers, committed one or more of the following negligent or careless acts or omissions, each of which was a violation of the relative standard of care within the meaning of TCA § 29-26-115:

    a) Failed to properly manage the veteran's pyoderma gangrenosum;

    b) Failed to properly monitor and regulate the veteran's antibiotic dosages or loads creating an acute kidney failure;

    c) Allowing this veteran to develop sepsis and failing to adequately treat the same;

    d) Mismanaging and overdosing this veteran on narcotic medications, requiring the

administration of Narcan, and suppressing his ability to breath and thrive;

e) Failed to timely intubate or achieve an airway for this veteran on the morning of March 22, 2018;

f) Allowed this veteran to be without oxygen intake or airway for greater than a half hour and possibly up to 45 minutes on the morning of March 22, 2018;

g) Failed to obtain a surgical airway timely when initial intubation attempts failed and the veteran's oxygen saturation numbers were life and brain threatening;

h) Continued to make attempts to orally or nasally intubate this patient when it was known that he was a markedly difficult intubation, and when prior attempts had failed, and knowing the patient's blood oxygen had been at extreme critical levels for an extended period and the patient would be suffering from hypoxic brain damage if oxygen was not restored;

i) The health care providers allowed this patient to remain approximately 45 minutes without a palpable pulse for no valid medical reason;

j) Failed to recognize this veteran's deteriorating condition and failed to electively intubate the evening prior to his death, but instead allowed the veteran to deteriorate to the point of life and death emergency;

k) Failed to keep a true code sheet for the code blue emergency, which itself is a breach of the standard of care, and lead to confusion or disorganization in responding properly to the emergency situation;

l) The employee providers of the Memphis VA continued to attempt failed intubations after failed intubations, against ACLS guidelines and contrary to the standard of care. It was contrary to the standard of care for the ENT physician attempting to

       perform two intubations after multiple prior failures, when he should have immediately established a surgical airway.

m)  The physician managing this patient breached the standard of care in allowing the delays in establishing an airway as set out herein;

n)  Defendants delayed in establishing an airway additionally by unnecessarily waiting for an ENT physician to arrive when the standard of care required an immediate surgical airway;

o)  Failed to adequately treat a treatable sepsis leading to the veteran's decline and inability to obtain oxygen or recover.

44.    As a direct and proximate result of one or more of the aforesaid negligent acts or omissions, Plaintiff's decedent, Dr. Sutton, was caused to suffer great pain and distress, to suffer a deterioration in his condition and his ability to breathe, declining into ARDS; was caused to suffer both mental and physical pain and a delusional state; was caused to desperately gasp for air; was caused to suffer the mental anguish of impending death; and was caused to suffer death.

45.    As a further direct and proximate result of the negligence aforesaid and the damages caused thereby, veteran Herbert Lee Sutton M.D. suffered damages as allowed for in the Tennessee Wrongful Death Act or otherwise under law.

46.    As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of Defendant, and of the death of Plaintiff's decedent Dr. Sutton, Plaintiff and the next of kin of decedent have suffered extreme grief, anguish, and suffering; have expended sums for wrapping up the affairs of decedent's life; have lost the enjoyment of decedent's company, attention, guidance, care, protection, training, affection, love, advice, companionship and counsel, as well as the pecuniary value of decedent's life; Plaintiff and the next of kin have

suffered the loss of consortium with decedent, and all of the damages and loss permitted by the Tennessee Wrongful Death Act.

WHEREFORE, for the reasons set out above, Plaintiff Nicole Sutton as the Surviving Spouse of Herbert Lee Sutton M.D. (deceased) pray this Court enter judgment in favor of her and the children of decedent in an amount fair and sufficient to compensate for their loss and damages, for and amount fair and sufficient to compensate for the pain and suffering of Dr. Sutton prior to his death, for costs of litigation and Rule 54 discretionary costs, and for all other damages for wrongful death under Tennessee law, both general and specific, and for such other relief as this Court deems just and proper.

Respectfully submitted,

GODWIN, MORRIS, LAURENZI & BLOOMFIELD, P.C.
50 North Front Street, Suite 800
Memphis, Tennessee 38103
(901) 528-1702 Phone
(901) 528-0246 Fax
E-mail: elaurenzi@gmlblaw.com


By: /s/ Eugene A. Laurenzi
EUGENE A. LAURENZI TN BAR #09528

*and*

LAW OFFICES OF DAVID N. DAMICK
DAVID N. DAMICK, MO BAR #38903
(*Motion for Admission Pro Hac Vice to be filed*)
211 N. Broadway, Suite 2420
St. Louis, MO 63102
Phone: 314-231-0570
Fax: 314-621-8639
E-mail: dnd@damicklaw.com